STEHLIN-MILLER-HENES COMPANY *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, New Haven, June Term, 1922.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

An agreement with an owner of a building about to be erected, to install the heating, ventilating and electric light plants therein as rapidly as the building is in condition for that work to be done, to cause no delay in the progress of the work of the general contractor, and to pay a penalty for each day's failure to complete the installation beyond a specified date, gives rise to an implied promise on the part of the owner to keep the work on the building, by whomsoever done, in such a state of forwardness as will enable the contractor doing this special work to complete it within the time limited.

When a committee to whom a case has been referred reports only the ultimate fact found, a party claiming to be aggrieved by any ruling or conduct of the committee must, unless the court on motion recommits the report, file a remonstrance against its acceptance and therein state specifically the rulings complained of, with such facts as it is claimed show their materiality to the issue before the committee, and that such rulings were wrong and harmful to the remonstrant. The other party may, by denial, raise the issue that no such rulings were made, or by demurrer, that they were correct or were not harmful to the remonstrant. The questions which the court or judge is to try upon such remonstrance are the questions of fact or law thus presented.

In the present case the committee, without stating reasons, disallowed certain items of damage claimed by the plaintiff contractor against the defendant owner, as a result of delays in the progress of the work by the general contractors. The plaintiff filed a remon-

strance against the acceptance of the committee's report, alleging that the committee erroneously ruled that the defendant was not liable for damage so caused, and the defendant demurred to the remonstrance. *Held* that by demurring the defendant admitted that such ruling was made, and was therefore debarred from claiming in this court that the committee's action was based upon the plaintiff's failure to prove the damage claimed.

A statement of the plaintiff's claims which differed from those advanced by it upon the hearing, was offered by the defendant and received in evidence by the committee, although objected to as a statement made with a view to compromise. *Held* that inasmuch as the statement did not appear to have been so made, the ruling of the committee was conclusive.

Argued June 13th—decided August 4th, 1922.

ACTION to recover damages for delaying the plaintiff and causing it loss in its work of installing electric, heating and ventilating systems in a school building under construction by the defendant, and for an alleged unpaid portion of the contract price, brought to the Superior Court in Fairfield County and referred to a committee who heard the parties and reported the facts; the court (*Marvin, J.*) sustained a demurrer to the remonstrance filed by the plaintiff, accepted the report, and rendered judgment for the plaintiff for $727 only, from which it appealed. *Error and cause remanded.*

*William S. Gordon* of New York City, and *Sanford Stoddard*, for the appellant (plaintiff).

*Henry E. Shannon, James C. Shannon,* and, on the brief, *William H. Comley,* for the appellee (defendant).

WHEELER, C. J. The report of the committee found the following facts: On January 23d, 1914, Durkin and Laas contracted with defendant city to construct a high-school building exclusive of the heating, ventilating, plumbing and electric work, on or before

April 23d, 1915. On January 14th, 1914, plaintiff made two contracts with defendant, one to do the electric work on or before April 23d, 1915, under a penalty of $10 per day for delay, the other to do the heating and ventilating work on or before May 23d, 1915, under a penalty of $25 per day for delay. Each of the contracts made with plaintiff contained this provision: "The work to be installed as fast as the building is in condition for it to be done, and this contractor is not to cause any delay in the progress of the work of the general contractor."

There was a delay, in the spring and summer of 1914, of approximately three months, in the work of the general contractors, Durkin and Laas, but after work was fairly started it progressed with reasonable regularity. In February, 1915, there was a delay of a week due to the general contractors. In September, 1914, defendant took the contract from Durkin and Laas and made a new contract with Shaughnessey to complete the work, and at this time there was a delay of three weeks. The building was practically completed about February 9th, 1916. All of the plaintiff's work under its two contracts was practically completed in November, 1915. In paragraph thirteen of his report, the committee finds that after the operations were actually under way in the fall of 1914, the work progressed under Durkin and Laas in the normal and usual manner in which such buildings are erected, although somewhat slowly, and after Mr. Shaughnessey took charge it progressed in the normal and usual manner in which such buildings are erected. The building had not reached such a stage of construction as to permit the plaintiff to complete its two contracts on or before the dates of completion provided therein. The complaint contained two counts, the first for $166.59 alleged to be due for work done under the contract for the

electric work and for damages for delay in preventing plaintiff from completing this work within the time provided therein; the second for a balance of $327.80 alleged to be due on the heating and ventilating contract and for damages for delay in completing this contract within the time provided therein. The fourth, fifth and sixth paragraphs of each count were identical, except as to the date of completion, viz: "4. After the execution and delivery of said contract, the defendant failed for a long time to provide a building for the plaintiff to do its work in, and failed to keep the construction of the building in a proper state of forwardness so that the plaintiff could proceed with its work, and delayed the plaintiff in beginning its work, and after the plaintiff had begun its work the defendant prevented the plaintiff from continuing its work and ordered the plaintiff to cease working and to delay its work. 5. As a result of said acts of the defendant the plaintiff could not complete its contract within the time fixed by said contract for the completion of the work, namely, on or before April 23d, 1915, but was delayed until and could not complete its work until said December 1st, 1916. 6. As a result of said acts of the defendant the plaintiff has suffered great loss and damage, in the increased cost of material and labor, the cost of superintendence and supervision during the period beyond said April 23d, 1915, the loss of the time of the employees of plaintiff due to interruptions and delays in the work, the additional premiums on the bond required to be furnished by the plaintiff, and sundry other expenses and costs incidental to and resulting from said acts of the defendants." These three paragraphs, with their denial in the answer, presented these questions for the committee to answer in his finding of the facts: 1. Did the defendant delay the plaintiff in its work by failing to keep the construc-

tion of the building in a proper state of forwardness so that plaintiff could proceed with its work and complete its contracts at the time agreed? 2. As a result of such delay (if proved), did the plaintiff suffer loss and damage in the particulars specified in paragraph six of these counts? The plaintiff's damages were set forth in eighteen items. As to item one, the committee found that the plaintiff should be allowed $327.80 as an unpaid part of the contract price. Item nine, excess cost of sheet metal $400, due to the delay of the general contractor, the committee allowed. The committee disallowed items ten, eleven and twelve, because it did not appear that there were any written orders from the architect to provide for said extra cost. It disallowed the other thirteen items without specifying the ground of disallowance. The plaintiff filed a remonstrance to the report, a part of which was as follows: "3. It appears from said report that the construction of the building did not progress in such a manner as to permit the plaintiff to complete its contracts within the time limited. 4. It appears from said report that the building was not completed for nearly a year beyond the time fixed in said contracts for the completion of the work required to be performed by the plaintiff under the contracts above referred to, a large part of which delay was due to delays by the general contractors and delays incident to the making of new contracts for the completion of the building in particulars other than the work required to be done by the plaintiff. 5. It does not appear from the report that any of the delays contributing to the delay in the final completion of nearly a year were attributable to the failure of the plaintiff to carry out the contracts above referred to. 6. It appears from said report that the committee has applied an erroneous rule of law to the evidence, in that it appears that he has ruled that the plaintiff

cannot recover for damages resulting from delays beyond the time fixed for the completion of his work in said contract, because the building progressed 'in the normal and usual manner in which such buildings are erected,' whereas the true rule of law is that the building must progress in such a manner as to permit the plaintiff to complete its contracts within the time set therein for completion."

The defendant demurred to the remonstrance for the following reasons: "1. It appears from the report of the committee that the plaintiff was delayed in the performance of its work under said contracts, due to the manner in which the general contractors performed the work, and that the committee allowed the plaintiff just damages for whatever loss it suffered as a consequence thereof.   2. It appears from the transcript of the evidence that defendant's Exhibit A was properly admitted in evidence."   The court sustained the demurrer, accepted the report, and rendered judgment for the $727.80, and the appeal brings up the ruling upon the demurrer.

The defendant offered in evidence, and the committee admitted, a statement of the plaintiff's claims which differed from the claims made by the plaintiff on the hearing.   Its admission was objected to on the ground that it had been made with a view to a compromise. On the record it does not appear to have been so made, and the adverse ruling of the committee is therefore conclusive upon this point.

The remaining ground of demurrer raises the question as to whether or not the committee disallowed the thirteen items of plaintiff's claimed damages through a failure to apply the correct rule of law to them.   The action for damages was for the breach by the defendant of the contract implied in its provision that "the work to be installed as fast as the building is in condition for

it to be done, and this contractor is not to cause any
delay in the progress of the work of the general con-
tractor." The plaintiff claimed that this implied con-
tract was, that the defendant must provide a building
in a proper state of forwardness, so that the plaintiff's
work could be installed within the time limited in its
contracts with defendant. · The defendant disputed
this claim and insisted upon the argument in this court
that there was no authority to be found supporting it.
The trial court, in sustaining the demurrer, erroneously
held the rule to be contrary to plaintiff's position.
The rule is undoubted in circumstances such as were
present in this case, that an implied contract arose
on the part of the defendant to keep the work on the
building, whether done by itself or other contractors,
in such a state of forwardness as would enable the
plaintiff to complete its contracts within the time lim-
ited. *Allamon* v. *Albany,* 43 Barb. (N. Y.) 33; *Mans-
field* v. *New York Central & H. R. R. Co.,* 102 N. Y.
205, 6 N. E. 386; *Bates & Rogers Const. Co.* v. *Board
of Commissioners,* 274 Fed. Rep. 659; *Tobey* v. *Price,*
75 Ill. 645; *Hutt* v. *Hickey,* 67 N. H. 411, 9 Atl. 456;
9 Corpus Juris, p. 715, note 66(e).

But it is said that the decision of the trial court was
right in spite of its adoption of an erroneous rule of law,
since the report itself shows that these items were dis-
allowed because not proved, and not because the com-
mittee applied an incorrect rule of law. We have recog-
nized two methods of procedure where the claim is that
upon the face of the report it appears that the commit-
tee has erred. In *McKeon* v. *Byington,* 70 Conn. 429,
432, 39 Atl. 853, we hold that such a question may be
raised by the remonstrance without sending the report
back to the committee and without demurring. In
*Fox* v. *South Norwalk,* 85 Conn. 237, 240, 82 Atl. 642,
we state the practice where a demurrer to the remon-

strance is interposed for error apparent upon the face of the record: "Where the committee reports only the ultimate fact found, the party claiming to be aggrieved by any ruling or conduct of the committee on the hearing, and seeking relief therefrom, must, unless the court, on motion, recommits the report, file a remonstrance against the acceptance of it, and therein state specifically the rulings complained of, with such facts as it is claimed show their materiality to the issue before the committee, and that they were wrong and harmful to the remonstrant. *Geary* v. *New Haven*, 76 Conn. 84, 91, 55 Atl. 584. The facts relied upon by the remonstrant are thus spread upon the record. If the other party asserts that there were no such rulings as claimed, he can answer the remonstrance by a denial of the facts alleged. If he admits that the rulings complained of were made, but claims that they were correct, or, if not correct, not harmful to the remonstrant, he may demur. The questions which the court or judge is to try upon a remonstrance are the questions of fact or law thus presented." The defendant could have denied that the ruling alleged in paragraph six of the remonstrance was made. When it demurred, it admitted that the ruling as alleged was made, and claimed that it was correct. This authority conclusively disposes of this appeal. In the face of this practice defendant contends that it can go back of the admissions of the demurrer to the facts of the report. The committee did not find the facts as to each of these thirteen items, as was required by the usual practice in cases of this character. Counsel for defendant in their brief take the ground that the committee was not attempting to state any rule of law whatsoever, but to indicate by its disallowance of these items that they were not proven. The final allowance or disallowance of these items required the application to the facts in

evidence of this rule of law. Until the facts as to these items are found and to these facts this rule of law is applied by the trial court, the plaintiff has never had its day in court. The committee finds the facts and recommends the conclusion or judgment; it has no authority to disallow a claim or an item of a claim. The committee has likewise no authority to adopt or reject a rule of law, except by way of recommendation to the court.

There is error and the cause is remanded to be proceeded with according to law.

In this opinion BEACH and BURPEE, Js., concur; CURTIS and KEELER, Js., dissent.