THE HOPEWELL BAPTIST CHURCH OF HARTFORD
*v.* DAVID S. CRAIG

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued May 9—decided June 12, 1956

*Jacob Schwolsky,* with whom was *Henry J. Gold-berg,* for the appellant (plaintiff).

*Harry Cooper,* with whom was *Frederick J. Rundbaken,* for the appellee (defendant).

WYNNE, J. In this action the plaintiff is seeking an injunction to restrain the defendant from acting as its pastor. The complaint alleged that on April 26, 1954, the members of The Hopewell Baptist Church of Hartford voted to organize as an ecclesiastical corporation under chapter 257 of the General Statutes. It further alleged that the church corporation adopted by-laws for its government, that the board of trustees which was created under those by-laws voted on September 16, 1954, to terminate the services of the defendant as pastor of the church, and that the defendant insists upon continuing to act as pastor.

In his answer the defendant denied the existence of a church corporation and, in a counterclaim, alleged that the plaintiff is an unincorporated, independent religious body functioning as a congregation. He also denied that the plaintiff by a two-thirds vote of its adult membership adopted reasonable by-laws for its government and the regulation of its affairs and that the by-laws became a part of the charter of the church. In his counterclaim he alleged that he had not been legally dismissed, and he sought an order under which he would receive from the church funds all the salary due him as pastor.

The pleadings having been closed, the matter was referred to Hon. Newell Jennings as state referee to hear and report to the court the facts in the case.

Following is a summary of the facts found by the referee: The plaintiff was founded on March 18, 1928, as a voluntary religious organization. It was of the congregational polity and followed in general the customs and usages of Missionary Baptist churches. The principle of majority rule by its members, in particular as to the employment and termination of employment of the pastor, is fundamental to its form of government. Business affairs were transacted at regular monthly meetings. Whenever a matter of special business was in prospect, it was the custom to announce from the pulpit that it would be taken up and acted upon at the next regular business meeting. Since 1942, the defendant, a regularly ordained minister of the Baptist faith, has been the plaintiff's pastor. Prior to April 26, 1954, the plaintiff had no written constitution or by-laws. In February, 1954, the defendant at a regular monthly business meeting stated that to enable the church to receive gifts and perpetuate its name, it would be desirable for it to be incorporated. Regular business meetings were held on March 1, 1954, and March 27, 1954. At one of these meetings a report was made that the corporation papers of the church were being prepared. This was the only notice given of the meeting held on April 26, 1954. Between 200 and 250 members of the church were present at this meeting out of a total membership of about 1000. The clerk started to read the proposed by-laws. They had not been seen by the defendant or by the members with the exception of a few trustees. The meeting broke up in turmoil and confusion. The moderator could not ascertain the intent of the members and the result of the vote taken was never declared. On September 25, 1954, more than ten adult members, and again on October 6, 1954, more than twenty-

five, requested the board of trustees in writing to call a special meeting of the church members to vote on the status of the pastor. The second petition was sufficient, tested either by statute or custom and usage.

During the hearing before the referee, the plaintiff sought to prevent any inquiry by the defendant concerning the adoption of by-laws by the plaintiff on the ground that the defendant could not make a collateral attack on the existence of the plaintiff as a corporation. The inquiry, however, was permitted, and the plaintiff duly excepted. The referee concluded that the purpose and intent of the trustees was to use the corporation and the by-laws to terminate the services of the defendant, that the meeting of April 26, 1954, was not legally announced and held, that the church congregation did not adopt or approve either the certificate of organization or the by-laws, and that even if the by-laws were legally adopted, the action of the trustees in dismissing the defendant was not effectual because it was not done at a special meeting. The referee recommended that judgment be rendered for the defendant on the complaint, and on the counterclaim for the salary due him from November 1, 1954, to the date of the judgment, with interest, and further that a mandatory injunction should be issued to require the plaintiff, pursuant to the petition of October 6, 1954, by members of the church to the trustees, to call a special church meeting to determine the status of the defendant as pastor. By stipulation it was agreed that proceedings relating to the dismissal of the defendant should be held in abeyance pending the outcome of the case. A motion to correct the report of the referee was denied. Upon exceptions to the report, the court made a correction in one of the findings of

the referee and found that the remaining exceptions were without merit.

The plaintiff seeks to have us order extensive corrections in the referee's findings. The findings as corrected are supported by the evidence and must stand. One point with reference to the question of correcting the findings may, however, be briefly considered. It is the plaintiff's claim that the referee misconceived his real function in passing upon the plaintiff's motion to correct. As we understand its claim, it is this: It is not the function of the referee, in passing on a motion to correct, merely to find some evidence to sustain his findings but rather to review all of the evidence to determine whether or not on the basis of the weight of it any correction is necessary. This is correct. There is nothing in the record, however, which demonstrates that the referee did not pass upon the motion in the required manner.

The main controversy in the case revolves around the question whether the defendant should have been permitted to raise the question of the validity of the by-laws and by so doing collaterally attack the legality of both the corporation and the by-laws. The complaint alleged both that the church corporation was legally organized and that the by-laws were adopted by a two-thirds vote of the adult membership of the church. The answer denied both allegations. Consequently, these matters were in issue. The attack on the legality of the by-laws is direct. It was essential for the plaintiff to prove that the by-laws had been properly adopted and that the action of the board of trustees in terminating the services of the defendant as pastor was pursuant to them. See *Russian Orthodox Greek Catholic All Saints Church* v. *Kedrovsky,* 113 Conn. 696, 704, 156 A. 688; *Independent Methodist Episcopal Church*

v. *Davis,* 137 Conn. 1, 14, 74 A.2d 203. The referee's finding on this feature of the case cannot successfully be challenged and must therefore stand. *Lalley* v. *Bridgeport,* 96 Conn. 501, 503, 114 A. 678. Furthermore, the rule against collateral attack does not apply to corporate by-laws. A corporation derives its existence from the state, but its by-laws come into existence through the action of its members. 13 Am. Jur. 283, § 151. They are laws made by the corporation itself and consequently can be challenged, as the by-laws upon which the plaintiff relies were challenged.

Pursuing this claim of collateral attack, the plaintiff asserts that the referee was without power to question the records of the plaintiff which purported to show the adoption of the by-laws. Corporate records are not conclusive but are prima facie evidence only. 13 Am. Jur. 295, § 170. The referee could properly inquire whether the facts were different from those stated in the records. Here again an issue of fact was involved, and the inquiry was proper. *Miller* v. *Bellamore Armored Car & Equipment Co.,* 86 Conn. 548, 550, 86 A. 13. The plaintiff's claim that an attack upon the by-laws was in effect a collateral attack upon the corporation is invalid.

The plaintiff contends that judgment cannot be entered for the defendant on the counterclaim. The referee found that the defendant had been pastor of the church since 1942 and had received no salary since November 1, 1954. These paragraphs were not questioned in the motion to correct the report of the referee. The referee recommended that judgment be rendered for the defendant for the amount of his salary from November 1, 1954, until the judgment, with interest. To this recommendation the plaintiff took no exception except on the ground that the

referee had no power to make any recommendation. This ground was not well taken. *Stehlin-Miller-Henes Co.* v. *Bridgeport,* 97 Conn. 657, 665, 117 A. 811; *Lyon* v. *Wilcox,* 98 Conn. 393, 396, 119 A. 361; *Hegel* v. *Hegel,* 99 Conn. 18, 19, 120 A. 722. That being so, the court was justified in rendering a judgment on the counterclaim. *Clark* v. *Cox,* 134 Conn. 226, 233, 56 A.2d 512.

There is no error.

In this opinion the other judges concurred.